WILLIAM G. CROSS, Administrator *et al.*, plaintiff in error, *vs.* YOUNG CROSS, defendant in error.

Where the verdict is wrong as to any of the joint defendants, and the Judge of the Superior Court is dissatisfied with his own rulings on the trial, and has granted a new trial, this Court will not interfere with his discretion, though the verdict might have been sustained in the discretion of the Court, as to part of the defendants.

New trial. Before Judge CLARK. Lee Superior Court. March Term, 1870.

The Ordinary of said county brough debt for the use of Young Cross against William G. Cross as principal, and Stephen Gay, and John T. Brown, as his securities upon the

667

bond of William G. Cross as the administrator of Joseph T. Cross. The alleged breach of said bond, was that Young Cross, at November adjourned term, 1859, of said Court, obtained a judgment against said administrator, as such, for $1,040 00, with interest from the 19th of January, 1860, and $11 25 for his costs, and another judgment for $78 25 with interest from the same date and the same costs; that *fi. fas.* were issued thereupon, and upon each of them there had been a return of *nulla bona.*

The defendants pleaded *nil debet,* and that said judgments were void because they were obtained by a fraudulent combination between Young Cross and said administrator. Gay died, his administrator was made a party and pleaded *plene administravit præter.* Plaintiff's counsel read in evidence the bond and an exemplified copy of said action and *fi. fas.,* which conformed to the declaration, and closed.

Defendant's counsel introduced WM. G. CROSS, who testified as follows: Said estate, when it came into his hands, as administrator, consisted of lands, slaves and other property; of this each distributee received about $4000 00. The lands were worth about $1500 00; Young Cross received on his distributive share about $4,000 00. This claim of Young Cross was not embraced in this settlement, because the estate did not owe it to him; the estate had some *fi. fas.* against Young Cross, which were given up to him because he claimed that he had paid them and that his father held them to protect his property from other debts.

One GILL, testified that he was present at the settlement between the administrator and the heirs-at-law of said estate, which took place a few days after the sale of the property by the administrator. That this sale was on the first Tuesday in December, 1859, and embraced all the property but one lot of land on which one of the heirs was living, and had lived before intestate's death, and had made valuable improvements on it, and that at said settlement there was a full accounting of each distributive share, and what each owed the estate; that he, (Gill,) was then asked to make the settlement which he did; each was entitled to about $4,100 00, and

Cross *vs.* Cross.

that amount was paid to each in property or notes, and each gave the administrator a receipt for said amount as his share. [Young Cross received $4,100 00 in a negro girl, a note and some other property which he had bought at the sale, that the amount due by the estate to Young Cross for the Weston notes, was talked of and entered into said settlement, and Young Cross was allowed a credit of $600 00 for the same.] At said sale the administrator bought some slaves and carried them away with him ; whether he had any of them after January 1860, witness did not know; [that Young Cross owed the estate and that was taken into the account, and this debt sued on was settled in said settlement.] He further, upon cross-examination, testified that the unsold land was accounted for in paying to the heir in possession of it his share of the estate. So much of Gill's evidence as is in brackets, was objected to by plaintiff's counsel because the receipt was not produced. It was ruled out, but subsequently, when, on cross examination, plaintiff's counsel showed what entered into the settlement with the other heir to make up his share, he allowed that evidence.

Gay's administrator was introduced and testified to nothing except as to the very small value of Gay's estate which had come to his hands. The jury found for the defendants. Plaintiff's counsel moved for a new trial upon the ground that the Court erred in admitting said evidence of Gill, which was objected to, and because the verdict was contrary to the law and the evidence. The new trial was granted and that is assigned as error by all the defendants.

HAWKINS & BURKE, for plaintiffs in error.

LYON & IRVIN, for defendants.

*By the Court*—BROWN, C. J., delivering the opinion.

We think the judgment in this case in favor of William G. Cross the administrator, in the teeth of the judgment rendered against him in Terrell, was erroneous ; and there should be a new trial as to him, see 1 Kelly, 13. And as

the Judge who tried this case was not satisfied with his own ruling in reference to the admissibility of the evidence relative to the receipt, and has granted a new trial generally; and as we think the ends of justice may require that the whole case be again submitted to the jury, we will not control the discretion of the Court below in setting aside the verdict and granting a new trial.

Judgment affirmed.

*NOTE.—Prior to 1866 the decisions of the Supreme Court were delivered *ore tenus* from the bench; the opinions and head-notes were subsequently written out by the Judges delivering the decisions respectively, and were thus published by the Reporter. In that year the General Assembly enacted that, "no decision shall be delivered *ore tenus;* but the same shall be announced by a written synopsis of the points decided, which shall be delivered during the term at which the decision was made. And no decision shall be published in the reports until the said decision shall have been revised by each of the Judges presiding in the case." Acts of 1866, pages 46-7, Irwin's Revised Code, section 4210.

Under this act the written synopses were read from the bench and generally constituted the head-notes to the opinions which were prepared by the individual Judge as before. When the opinions had been recorded and delivered to the Reporter, he took it for granted that the law as to revision had been complied with, though the revision was seldom, if ever, made.

At June Term, 1870, the Chief Justice announced that in future so far as practicable the synopses and the opinions would be written and read from the bench, after they had been revised by the full Court, and those should be published by the Reporter as " *by the Court,*" etc. Those opinions not begun in those words were written after the Court adjourned, as heretofore was practiced.